OPINION
{¶ 1} The instant appeal arises from Appellant's two convictions of rape in violation of R.C. § 2907.02(A)(1)(b), first degree felonies. Appellant was convicted following a December 11, 2001, jury trial held in the Columbiana County Court of Common Pleas. He was subsequently sentenced to two consecutive eight-year sentences on February 26, 2002. The trial court also deemed Appellant a sexually oriented offender pursuant to R.C. § 2950.
 {¶ 2} Appellant timely appealed this matter following his sentencing, but the appeal was dismissed for his failure to prosecute. On January 15, 2004, this Court granted Appellant's application to reopen his appeal. For the following reasons, however, Appellant's convictions are affirmed.
 {¶ 3} Appellant's sole assignment of error on appeal asserts:
 {¶ 4} "IN VIOLATION OF DUE PROCESS, THE GUILTY VERDICTS ON THE TWO COUNTS OF RAPE WERE ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} To determine whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts, the jury clearly lost its way creating a manifest miscarriage of justice. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. If an appellate court finds that a verdict is against the manifest weight of the evidence, then the court must reverse the conviction and order a new trial. This, however, should only be done in exceptional cases when the evidence weighs heavily against the conviction. Id. citing State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.
 {¶ 6} Appellant specifically argues on appeal that the evidence against him was not overwhelming and that the jury clearly lost its way. However, a review of the trial transcript in its entirety supports Appellant's rape convictions.
 {¶ 7} R.C. § 2907.02(A)(1)(b) prohibits one from engaging in sexual conduct with another when, "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct includes fellatio. R.C. § 2907.01(A).
 {¶ 8} Appellant was a close friend of the victim's stepmother and the victim was a close friend of Appellant's niece. The victim was nine years old at the time of the offenses, and eleven at the time of the trial. The offenses occurred while the victim was visiting Appellant's apartment in Columbiana, Ohio, in the summer of 1999, and the spring of 2000.
 {¶ 9} The State of Ohio presented five witnesses at trial. The male victim was the only person to testify with direct and personal knowledge of the offenses. The victim provided the following account describing the first offense. Appellant invited his half brother, another boy, Appellant's niece and himself to his apartment complex to play tennis one summer day. The victim fell and injured his knee while they were playing, so he entered Appellant's apartment to clean his wound. Thereafter, the victim sat on Appellant's couch and watched cartoons. Appellant sat next to him. Appellant pulled down the victim's pants and underwear and performed fellatio on him. (Tr., pp. 85-91.) The victim did not yell for help or try to stop Appellant. This encounter lasted approximately ten minutes. (Tr., pp. 91-92.)
 {¶ 10} According to the victim, the second offense arose while Appellant was having a pizza party and sleepover for his niece, the victim, and the victim's younger half brother. The victim's younger brother went home early because he did not want to spend the night. Thereafter, Appellant's niece went to the laundry room. While she was gone, Appellant pulled down the victim's shorts and performed fellatio on him. (Tr., pp. 94-96.) Appellant did not tell anyone what occurred because he thought that he would get into trouble. However, the victim eventually revealed these two incidents to his counselor. (Tr., p. 97.)
 {¶ 11} Sally Beight, an investigator with the Columbiana County Department of Job and Family Services, also testified. She testified that she had been involved with the victim regarding another incident. While the victim, here, was not the alleged victim in this other incident, Beight advised his mother that he was showing signs of sexual abuse and recommended counseling. This counseling eventually revealed the instant offenses. (Tr., pp. 167-169.)
 {¶ 12} Beight, along with Columbiana Police Department Detective John Jay conducted a voluntary recorded interview of Appellant. This audio interview was played for the jury. During the interview, Appellant claimed that on the night his niece and the victim slept at his apartment, Appellant woke up in the middle of the night with the victim's torso on his face. Appellant was unsure whether the victim's shorts were on or off. (Tr., p. 119.) Appellant attempted to depict the victim as emotionally needy, and he indicated that he felt that the victim had a "crush" on him. (State's Exh. 6.)
 {¶ 13} The victim's mother also testified on the state's behalf. She indicated that she learned of her son's sexual molestation in May of 2000. She testified that she felt something odd was occurring because Appellant gave her son money and presents. For example, an Easter card was left at her home containing twenty dollars that read, "Love you, Don." (Tr., pp. 10-11, 13-14.)
 {¶ 14} The mother also testified that the victim was performing badly in school and he was very reserved before he told anyone about these incidents. After he revealed the allegations against Appellant, the victim was more outgoing and made the honor roll. (Tr., pp. 15-16.)
 {¶ 15} The victim's stepmother also testified. She was married to the victim's father at the time of the offenses and at the time of the trial. She indicated that she was a very close friend of Appellant's sister and as a result, she became close to Appellant. (Tr., p. 39.)
 {¶ 16} The stepmother testified that Appellant sent her household five Halloween cards and approximately 14 Christmas cards in one year. She also identified Appellant's handwriting on numerous cards presented at trial. (Tr., pp. 485-0.)
 {¶ 17} She also identified Appellant's handwriting in a letter she received in the mail. It was addressed to her stepson, the victim, and provided in part,
 {¶ 18} "Excuse me, I'm sorry and I'm full of remorse. In fact, I couldn't feel worse. It's all my fault. I confess I did it all and don't let anyone say I didn't. I did the first thing wrong when I said hello. I apologize. When I saw how sad you seem to be, I could relate and I knew how cruel people could treat you. Bad move. When you came and sat on my lap and was rubbing the hair on my arms, I should have pushed you away.
 {¶ 19} "* * *
 {¶ 20} "It was also me who allowed you to melt on me. I should have tossed you on the floor. My mistake. Sorry. * * * The time you put your hands in my pockets and almost made me pass out, my fault. * * *." (Tr., pp. 55-56.)
 {¶ 21} The defense presented four witnesses on Appellant's behalf. Appellant's niece testified that on the day that they played tennis at Appellant's complex, the victim scraped his knee, but he went into Appellant's apartment alone. Appellant gave him the keys. (Tr., pp. 202-203.) She also testified that she never left Appellant's apartment to go to the laundry room on the night of the sleepover. However, she then conceded that it was not uncommon for her to do laundry there. (Tr., p. 211.)
 {¶ 22} Appellant's apartment complex resident manager also testified on his behalf. She stated that she was present on the day that the children were playing tennis, and that Appellant was with the children outside while they were playing. Further, the complex rules require all guests to be accompanied by the tenant. (Tr., pp. 175, 179.)
 {¶ 23} Appellant testified on his own behalf at trial. He indicated that he had had an "emotional relationship" with the victim's stepmother while her husband was in jail and the two were separated. (Tr., p. 217.)
 {¶ 24} Appellant recalls the children playing tennis at his apartment complex, but he denied any recollection of the victim injuring himself. Appellant claims that he never left the victim's younger brother that day. (Tr., pp. 239-240.)
 {¶ 25} Appellant also denied ever pulling the victim's pants down and performing oral sex on him. (Tr., p. 233.) He likewise denied writing the alleged "confession letter" that the stepmother read to the jury. (Tr., p. 253.) Appellant recalled writing a love message in one card, but he claims that it was intended for the stepmother. (Tr., pp. 258-259.)
 {¶ 26} Appellant also denied that anyone did laundry on the night of his sleepover. (Tr., p. 225.) However, he did testify that he believes that the victim urinated on him in the middle of the night during the sleepover. (Tr., p. 229.)
 {¶ 27} Finally, a handwriting expert, Steven Greene from the Bureau of Criminal Identification and Investigation, testified in Appellant's case. Greene testified that the prosecution can order a suspect to provide a handwriting sample for comparison purposes. Using this testimony, Appellant then argued that the "confession letter" was forged, since the state failed to request a handwriting sample from Appellant. (Tr., pp. 299-301.)
 {¶ 28} However, Greene indicated at trial that the prosecution contacted him in this case because Appellant's counsel was arguing that the "confession letter" was manufactured by cutting and pasting. This was the sole reason he was requested to testify. Greene concluded, however, that this was not a manufactured letter. (Tr., pp. 304-307.)
 {¶ 29} Based on the foregoing and a thorough review of the trial transcript in its entirety, it cannot be said that the jury clearly lost its way creating a manifest miscarriage of justice. The victim's testimony established that Appellant performed oral sex on him on two different occasions while he was under the age of thirteen. Further, there is nothing in the record reflecting that the testimony of Appellant and his niece were more credible or reliable than the victim's statements. Accordingly, Appellant's convictions were not against the manifest weight of the evidence.
 {¶ 30} As such, Appellant's sole assignment of error lacks merit and is hereby overruled.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.